Good morning, Your Honors, and may it please the Court. My name is David Ginsberg, of the law firm of McKenna, Long & Aldridge, here in the Los Angeles area, and I represent appellant Navcom Defense Electronics, which I'll refer to as Navcom. At this time, Your Honors, I'd like to reserve three minutes of my time for rebuttal. You have to keep track of it yourself, though. Yes, Your Honor. I'll watch my clock. Your Honors, if issue preclusive effect is permitted to be afforded to a state court ground, on summary judgment, that the parties agree, Your Honors, was neither addressed and certainly not affirmed on appeal by the California Court of Appeal in the state court action, then the possibility exists that Appellee Gould may indeed have a double recovery, recovering the same dollars through insurance settlements that it looks to recover from Navcom to compensate for the same harm, and that's expressly prohibited by the language of CERCLA 114B, which bars a double recovery. Your Honors, Navcom argued below that a share of Gould's insurance settlements that it received through settlements with its insurers that took place between 1994 and 2000, that a share of those settlements, which at the time had a value of approximately $71 million, and now has a present value of much larger, at least double that, Your Honors, that some share of that should be included in the court's calculation of a money judgment in favor of Gould and against Navcom. I don't want to throw you off track, but just, and I understand your focus is on the collateral estoppel rule, but there's a serious question, at least in my mind, about waiver of this in prior proceedings and why the special master's finding of non-waiver is supportable. So, I don't want to throw you off track, but just make sure you address that as well. No, I'd be happy to address that right now, Judge Fischer, that's just fine. At the outset, I'd like to make a statement about the standard of review that governs that particular issue. Gould argues in its response brief that the existence of a waiver is a de novo, should be afforded a de novo standard of review and interpreted that way. However, Your Honors, in the Ninth Circuit's case of CBS v. Merrick, it noted that the quote, the existence of a waiver is typically a factual issue and as a result should be reviewed under the clear air standard. And in this court's precedent of Hussein v. Olympic Airways, that clear air standard of review, Your Honors, was defined that the appellate court cannot reverse and thus there is quote, a definite and firm conviction that a mistake has been made. And even if the district court's findings were plausible in light of the record, an appellate court may not reverse. So, at the outset, that issue should be reviewed under the clear air standard. But getting to the merits. Well, let me ask a question. When this whole issue of offsets based on the prior insurance settlements was raised by your side, wasn't it raised really for the first time as a part of the special master proceeding as opposed to what was discussed and decided by the district court? Your Honor, it was raised as a means of an adjustment in terms of a damages calculation in front of the special master. The reason why it was not an issue at trial dates back, well, long before 2005. But in the record in 2005 at a status conference that Judge Walter presided over, the transcript of which is at the excerpt of record tab 29. And specifically, Your Honors, at pages 695 and 696 of that, of the excerpt of record, Judge Walter asked about the existence of insurance policies and suggested that someone should get the policies. Now, counsel for Gould, in response to Judge Walter's question, stated that it was their belief that the policies were kept at the division in El Monte out here in the San Gabriel Valley where the contracting work was done. However, when that statement was made to the court, Your Honor, those policies, every single relevant policy had been located and settled between 1994 and 2000. And that admission that those such settlements took place are at the excerpt of record tab 495, page 279, that the settlements took place with the insurers and that those settlements included the policies that covered the NAVCOM site. So unfortunately, what took place, Your Honor, in 2005 was a misrepresentation not only to the court but to NAVCOM as well. Now, NAVCOM tried in discovery in the district court action to get insurance policies. We asked for them. We were forced to file two motions to compel Judge Fischer on that point. And finally, a 30B6 witness was ordered to be present.  discovery. Judge Walter was not going to extend the court's schedule to allow discovery to continue. And at around the same time, in September of 2006, counsel for Gould at Supplemental Excerpt of Record 476, pages 6 and 7, boasted to CNA, one of the insurers, that it had actively resisted all efforts of NAVCOM to get at the insurance policies in the district court action. To put matters simply, Your Honor, Gould just did a good job of concealing the settlements from NAVCOM. But as the master and the district court in affirming the master's findings noted, that NAVCOM didn't raise the issue too late because it was raised at the time that Gould first made its first effort to monetize the declaratory judgment. I hope that answers Your Honor's concerns. I'm happy to spend more time on it, but I'd like to move on to the California law issue. One of the master's findings that allows for collateral estoppel to bar NAVCOM here is Judge Jones' decision in the state court action that this particular ground was not addressed nor affirmed on appeal. That somehow there was a cap on the insurance and that as a result, NAVCOM is precluded from arguing that issue here. That issue is governed by California law. And as this court knows, California law on that particular aspect of issue preclusion with alternate grounds is less than clear. However, certainly the modern trend of those decisions, Your Honors, as evidenced by the Beach Country Club case, as well as the Zebnik case and the Brown v. Tri-Union Seafoods cases, all conclude that when alternate grounds of judgment are appealed, however, not all of those grounds are affirmed, Your Honors, that preclusion only attaches to those grounds which are expressly affirmed. That's the modern rule, but we have, and if we were looking at this without DeRusso, that might be persuasive. But what do we do with DeRusso, which explicitly declined in an earlier era, but what to the existing California Supreme Court determination on what the scope of collateral estoppel was. And DeRusso was just decided 10 years ago, 2003, and one of those pellet state decisions had been decided by them, and then three were decided after DeRusso, but DeRusso still gave credence to the 1865 Skidmore case. It did, Your Honor. It did. And DeRusso's not an impediment. And here's why. In 2003, when DeRusso was decided, on page 1153 of that opinion, Judge Pollack, who was sitting by designation, noted that case law on the issue was sparse. And on page 1156 of the decision, Judge Pollack wrote that there were plausible arguments going the other way, yet the only published opinion at the time, in 2003, Your Honors, that the Court was aware of was the Butcher decision, which we can see did not address Skidmore. However, in the Torrance National Bank case, 1958, the Ninth Circuit noted that the law is, in part, an evolutionary process of judicial reasoning, and that in the Watts decision in 2002, the Ninth Circuit noted that certain facts and developments justify a reexamination. That's exactly what's going on here, Your Honors. There is a tidal wave of authority that has been present since the time DeRusso was decided. I can't stand up here, Your Honors, and argue that DeRusso was wrongly decided in 2003. But what I can tell you with certainty is that the predicate of DeRusso, the amount of case law that was out there when that decision was authored in 2003, is dramatically different than it is today. I'm not sure it's that dramatic. A tidal wave is a pretty big wave. How many opinions have you come up with? Three. Three. Three, Your Honors. Let me ask you this question. I'm not a learned California judge, because I'm from Colorado. But as I understand it, the state of California has intermediate appellate courts, and these decisions that you referenced, the three of them, come from intermediate appellate courts. They have different divisions, and they're decided in a way that really has no precedential value, per se. I recognize how you use them, but it's my understanding that the California Supreme Court has never decided this issue. So why should those three intermediate appellate court decisions be given sort of the grand weight that you argue they should be given? Because, Your Honor, it demonstrates the trend of authority in the state of California that is absolutely consistent with the restatement of judgment second, section 27, comment O on the issue. However, if this court has any reluctance or hesitancy about departing from the Derouza case, then the issue could very well be certified pursuant to California Rule of Court 8.548A to the California Supreme Court so that that body, Your Honors, can tell us affirmatively what the current state of the law of this aspect of issue preclusion is in California so that future litigants, as well as Gould and Avcom, will know the reach of a court of appeals narrow affirmance. Your Honors, I'd like to reserve the remainder of my time, if I may, for rebuttal. Very well. Thank you, Your Honors. Good morning, Your Honors. David Goulder of the law firm of Landy Bennett Blumstein of Portland, Oregon, on behalf of NICO, referred to in the briefs as Gould. The first thing I would like to respond to is, I guess, the notion that somehow Gould has pulled the wool over NDE's eyes. I hope that the court has had the opportunity to review the supplemental excerpt of record because that issue was thoroughly explored. For instance, Judge Walter, when he was asked to extend discovery in the original trial and all these matters were put in front of him, the other side was attempting to add a counterclaim for conversion of insurance, said, quote, and this is SER 502 at page 56, defendant blames the delay in learning this information, referring to Gould's settlements, on actions allegedly taken by plaintiffs to stonewall defendant's efforts to conduct insurance-related discovery and claims that it has been diligent in pursuing insurance-related discovery. Upon the review of the papers submitted by the parties, the court disagrees that defendant has been diligent in its attempts to discover the facts underlying its proposed claim for and finds that defendant has failed to demonstrate good cause sufficient to justify a continuance of the deadline for amended pleadings currently set forth in the CMO. Similarly, the state courts, both at trial and in the court of arbitration. Let me ask a question. After that ruling, then, the matter was taken to state court, is that right? Much later, yes. Yeah, but it went to state court. After they lost in the federal court, they raised the counterclaims or what they had proposed as counterclaims and other claims in the state court proceeding. And they lost there, too. And they lost there at every level. And they presented precisely these issues of Gould supposedly hiding the ball when Gould informed NDE of the existence of the global action that it had brought against 200 insurance carriers for over 100 sites that it had across the country. My client had the great foresight to go into a buying spree shortly before CERCLA was enacted and ended up with a host of liabilities at many, many sites. Case was settled or those cases were settled over an extended period of time. The settlement, the fact of settlements were a public record. We informed the other side of the existence of litigation in the 90s. Their attorney talked with our attorneys in Philadelphia. So I think the state court opinions go through in considerable detail. Again, that's in the supplemental excerpt of record 490 and 493. For instance, SCR 490 at page 330, the state court says NDE asserts that its ignorance in the settlements of the policy related litigation initiated by Gould constitutes concealment and tolls the statute of limitation until July 2006, which is when they claim they first discovered of Gould's insurance settlements. NDE's and you should keep your voice. I'm sorry to go back to the quote. NDE's current claim of ignorance, however, is flatly contradicted by its own admissions. So I wanted to deal with that issue first. Second, the notion that the Ninth Circuit has not has only once considered California law of issue preclusion where a court of a California court of appeal has affirmed on only one ground and not another has actually been looked at by this court a second time. I cited the case of Flying J, a Eastern District, California case. That case was affirmed by this court in 2009. Yet it's an unpublished opinion, but it was affirmed at 351 Fed Appendix 236, quoting from it, Flying J is collaterally stopped from proving causation on any of its claims in light of the determinations made by the California Court of Appeal in Flying J, omit the site. We are guided by the preclusion law of California and conclude that its threshold requirements are met. If you go to the briefs in that case, again, this is 2009 after two of the three California Court of Appeal cases that Natcom is relying on. The appellant's brief in Flying J has an entire section saying modern California law does not give collateral estoppel effect to a lower court finding if an appellate court affirms on a different ground. He cites now with Sevnik and Newport Beach opinions. This court has the. Counselor, you're OK. You're going to use a lot of your time on inside the court. We understand, ma'am. Dispose and we understand. OK. District courts. And let's assume that it's uncertain. It is clear that the California Courts of Appeal and the Supreme Court has cited favorably the restatement and comment. So let's assume that there's a plausible argument that the California Supreme Court confronted with the issue today would look to the decisions of the intermediate courts and draw some guidance from that. So why, at a minimum, why shouldn't we certify this to the California Supreme Court? Well, the exact same request for certification was made in Flying J and it was denied based with the same cases that now relies on. I would say that if you read the cases, I would say Newport is really the only case that actually holds the way the other side claims. The Zevnik case, a party attempted to use the denial of a motion to disqualify it as race judicata or issue preclusion as to a malpractice claim that had been filed against it. The trial court said, eh, it's not the same standard, but it also made another ruling. The appellate court relied on the alternative ruling and decided to reach, ignore the fact that the denial of a motion to disqualify would never have constituted a bar to a malpractice claim because the standards are different. The tri-union case is simply a court of appeals. There is no second appeal in that case. The court of appeals on an initial appeal simply affirms on one ground that says, I don't want anybody else relying on the other grounds of the trial court. The court certainly has the power to certify. I don't think in this instance it would be appropriate. I don't think they meet the standards. The certification in the record, the certification request in the record. You said it was in the Flying J. Yes. Yeah. In an appellate's opening brief in Flying J, they asked for certification. But is it in our record? The only In other words, you're saying, cited, do we have access to that request for certification? In the Flying J case? No, in this case. He's asking you. You Let me back up. They have asked for certification. No, no, no. Wait a minute. Let me make. You said. I'm not going to say it, Janney. Try to We could try to certify, certify, but you said the Ninth Circuit panel apparently sought certification, the one that resulted. I misspoke then because, no, the appellant in Flying J asked for certification. Asked whom? Asked the Ninth Circuit as an alternative. Which it didn't do. And it didn't do. Okay. So that's a big difference. Apologize. Okay. What year was that? 2009, after both the Newport and Zevnik decisions. You made it sound like the Ninth Circuit had requested certification in the California Supreme Court, and that's not what you said. I misspoke. Okay. More importantly, there is an independent grounds for denying this appeal. Contrary to what counsel suggested, the issue of insurance offsets was raised by NAVCOM throughout the federal court proceeding. In fact, it was the basis for a 30B6 deposition of the former general counsel. It was the basis or part of the argument as to why a counterclaim for conversion should be allowed, because, in fact, they argued that the issue was already in the case. For instance, SCR 496 at pages 164 and 257. Equally important, quote, equally important since CERCLA permits the court to assess contribution costs on an equitable basis, any monies already received by NECO's predecessors from insurers in payment of costs it now seeks from NDE associated with environmental remediation of NECO's predecessors. The El Monte operable unit of the San Gabriel Valley Superfund site property may be considered by the court in assessing any damages in this action. The same language was repeated. They actually submitted excerpts of the general counsel that talked about the fact that settlements were made just before trial. They withdrew them after trial. So they teed up the insurance settlement's offset and then withdrew it. More importantly, the notion that the first round of action in this case did nothing more than allocate liability 60% to them and 40% to Gould is absolutely false. The court carefully went through the argument. We sought a money judgment. We put in all our response costs. The court, in its findings of fact and conclusions of law, walked through all the offsets that NDE had raised. He eliminated, he found at ER 407, 119 through 126, he comes up with a total of a little over 8 million in response costs to Gould that occurred through that date. In pages in the same ER 407, in the subsequent five pages, he then determines all of the offsets. He nets them out and says, as of 7-31-06, Gould has incurred 885,000 or more in response costs. That was the fixed date the parties chose to put in front of the court to determine whether Gould had incurred any response costs. The court concluded, after all offsets, we indeed had. They're now coming in and saying, well, no, actually, as of that date, you didn't have any response costs. Or we certainly at least have the right to figure out whether there should have been additional offsets. Based on insurance settlements that predate the trial by from more than 10 years to 7 years. Gould certainly couldn't walk in with additional response costs from 2004 and 2005 and say, I'm sorry, those were in a drawer over here. We forgot about those. That is the equivalent of what the current proposal by ND is. They are attempting to rewrite Judge Walter's finding as to the amount that was owed, or the amount that Gould had incurred in terms of response costs as of 7-31-06. It turns out that because Gould had also actually promised in the original deal transaction to pick up the first 2.5 million, that as of the time of trial, as of 7-31-06, there was still 587,000 or thereabouts from that original indemnity left. So we weren't entitled to an actual money judgment at that time. But the finding was that we had incurred response costs after all the offsets that NAVCOM put in front of the court. It chose not to put the offsets in front of the court. Mr. Veazey, the fellow who was deposed, actually said he knew the gross amounts of the settlements for 100 known sites and 70 unknown sites. And I told the other side, without a court order, I'm not having them answer that, because your 30B-6 deposition asked for the amounts allocated to the NAVCOM site. There were no negotiations on that basis. There were no offers on that basis. We can't do it. But if you get a court order, we'll immediately give it to you. They chose not to seek that for tactical reasons. I don't know what the reasons. But they elected, they teed that issue up, and they even teed that issue up by submitting excerpts of Mr. Veazey's deposition at trial, and then they withdrew them. Mr. Veazey even testified at trial. They could have asked him, gee, in your deposition you said you knew the amounts of these insurance settlements. They didn't do it. So my view is I think as a matter of federal law, claim preclusion, issue preclusion, they can't even raise the issue. It's gone. Under federal law, as a result of claim preclusion, issue preclusion, based on the federal judgment, that's entirely separate from the question of whether they're bound by the cap decided in the state court. And the notion that this is somehow not a separate action, and therefore there is no federal res judicata, to me is preposterous. The case I cite is an administrative hearing that bounced up and down. We have a final judgment. This is an enforcement action on a final judgment. Very well. Thank you, Your Honor. Thank you. Your Honor, there's a few points on rebuttal. First, with regard to the Flying J case, in that opinion, the California Court of Appeal did address all of the grounds that were attempted to be relied on for preclusive effect. That's a dramatically different situation than what we have here. In the opinion, for example, the district court opinion, they note that the California Court of Appeal concluded that both courts independently found that no conflict, act or omission by Lawson or anyone associated with him had caused the disapproval of the Flying J purchase. They say what the Court of Appeals decided was that Flying J's case is ill-conceived and cannot succeed, because nothing it alleges any defendant did was or could have been the legal cause of harm to Flying J. In other words, that case was a nonstarter. It may not have made sense to certify in that situation, Your Honor. It does here, where the value of these settlements are very important when it comes to equitably allocating response costs among potentially responsible parties. And in the basic management case from 2008, the District Court of Nevada, the district court concluded that equity and common sense further dictate that plaintiffs cannot recover the remediation costs paid for by their insurance policies. Your Honor, there's simply no harm in determining at the district court level the share of those insurance recoveries that are allocable to the NAVCOM site. If we don't do that, Your Honor, Your Honors, the risk exists that Gould will double recover. And as I noted at the outset of my remarks, that is expressly prohibited by CERCLA. Mr. Goulder's statements about what happened and waiver, this has all been argued in front of the special master, in front of Judge Walter, the very judge who decided these issues. And Judge Walter, at excerpt of Record 510, page 12, concluded and affirmed the special master's report in its entirety, including the finding that there had been no waiver. Mr. Goulder did not respond at all to the clear error standard of review remarks that I made. And we simply rely on Gould's earlier statements from 2006 that it has, quote, actively resisted NAVCOM's attempt to engage in discovery relating to Gould's and Hoffman's insurance. That's all that happened, Your Honors. They did a good job of hiding the ball. Should they be rewarded for that? No. In the state court case that was litigated, it was all about NAVCOM acquiring rights to those policies, ownership of those policies, the ability to look to those policies to compensate NAVCOM, through the 1988 transaction, for harm. That number would have been a huge number had Gould not settled the policies. They did. That has, may I finish my sentence, Your Honors? I see my time is up. Go ahead. Thank you, Your Honor. That has no bearing at all on whether NAVCOM or any other potentially responsible party in a CERCLA contribution action can do as CERCLA dictates and requires and ensure that one potentially responsible party is not in the position of having a windfall or double recovery. Thank you. Thank you, Your Honors. We'll take a short break at this time. Thank you both.
judges: Daniel, Pregerson, Fisher